[PHILADELPHIA, FEBRUARY 10, 1834.]

The President and Managers of the UNION CANAL COMPANY of Pennsylvania *against* O'BRIEN and Others.

### CERTIORARI.

The act of assembly of 2d *April*, 1811, to incorporate the Union Canal Company of *Pennsylvania*, does not authorise the company to erect a dam across the whole channel of the river *Schuylkill;* but the supplementary act of 20th *February*, 1826, does authorise the erection of such a dam, and these acts being in *pari materia* must be construed as one act. Therefore the remedy provided by the 13th section of the act of 1811 for injuries to property therein mentioned, may be applied to obtain redress for such injuries as the erection of the dam may produce *directly* and *immediately* to property, or as may be in all cases of the like kind the *inevitable* consequence of its erection under the authority contained in the act of 1826.

The complainant, seeking a remedy under the acts above mentioned, must set out in his petition the nature of the alleged injury, and the particular ground of complaint, so that it may appear whether he claims damages for such an injury as the law provides a remedy for, or complains of *damnum sine injuria;* and if he fails to do so, this court will quash the proceedings of a jury giving him damages, and the judgment of the Court of Quarter Sessions entered thereon.

THIS case came before the court on a *certiorari* to the Court of Quarter Sessions of the County of *Philadelphia*.

It was argued by *J. C. Biddle*, for the canal company, and by *Kittera, contra*.

The opinion of the court was delivered by

KENNEDY, J.—The proceedings in this case were commenced and concluded in the Court of Quarter Sessions in the city of *Philadelphia*, and have been removed into this court by a writ of *certiorari*. *Dennis O'Brien* and others were the complainants, and presented their petition in that court, as is alleged under the provisions of an act of assembly passed the 2nd of *April*, 1811, entitled, " An act to incorporate the Union Canal Company of *Pennsylvania*," who were the respondents below, and plaintiffs in error here. The thirteenth section of this act, which has been referred to as authorizing the proceedings in this case, declares, " that if, in the opinion of the President and Managers of the said Union Canal Company of *Pennsylvania*, the construction and use of any different mode or device, or any improvement hitherto adopted, or such as may hereafter, anywhere be invented in the system of internal navigation, will be beneficial, it shall be lawful for them to make use of and apply the same, from time to time, and as well for such purposes, as for the necessary prosecution of the same, the said President and Managers, and their engineers, workmen and labourers, to enter into and upon all and singular the land and lands intended or supposed to be the proper route for the said canal and lock navigation; and shall have the power to purchase so much land along the tract of the canal and adjacent thereto, and tenements, mills, mill-ponds, waters, water-

courses, or other real hereditaments as shall in their opinion from time to time be necessary ; and in default of purchasing, it shall be lawful for the court of Quarter Sessions, or the Mayor's Court in the city of *Philadelphia*, on the application of the owner of the said ground, or of the said President and Managers, to appoint three suitable and judicious persons of any neighbouring county, at their discretion, or at the request of either party, to award a *venire* directed to the sheriff of any adjoining county to summon a jury of disinterested men in order to ascertain and report to the said court what damages, if any, have been sustained by the owner of the said grounds by reason of the said canal or other works ; which report, being confirmed by the court, judgment shall be entered thereon, and execution on motion may be issued in case of non-payment of the money awarded, with reasonable costs, to be assessed by the court ; and it shall be the duty of the jury in valuing any lands, tenements or hereditaments to take into consideration the advantage derived to the owner or owners of the premises from the said navigation passing through the same."

The petitioners state that, on the first day of *April*, 1825, and ever afterwards, they were " seized in their demesne as of fee, of and in a certain messuage, tenement, distillery and lot of ground thereunto appertaining, situated in the borough of *Reading*, county of *Berks*, bounded on the south by west *Penn's* street, on the east by the road leading from *Penn's* street up the bank of the river *Schuylkill*, and on the west and north by the said river *Schuylkill* and land of *George M. Probst.*"   And " that on or about the tenth day of *November*, A. D. 1826, the President and Managers of the Union Canal Company of *Pennsylvania*, by their superintendents, engineers, artists and workmen, made and erected a dam across the said river *Schuylkill*, a short distance below the said property : That in consequence of the construction of said dam, the said messuage, distillery and lot of ground first mentioned, have been considerably injured, and your petitioners have sustained great damage thereby."

The petitioners also further complained, of being injured in another lot of ground, of which they were owners, by reason of the Union Canal Company's having made the canal through it, but for this, it appears by the report of the jury, that they were satisfied by the Union Canal Company's buying it of them and paying them their price for it.   No damages were therefore assessed on account of it, but four thousand five hundred dollars were assessed on account of the damage done to the other property, and reported by the jury in favour of the complainants, to the Court of Quarter Sessions of the County of *Philadelphia*.   The court after confirming this report, entered judgment upon it.

Four exceptions have been taken to the proceedings and report of the jury, which may all be resolved into a question of jurisdiction in the Court of Quarter Sessions to take cognizance of the petition of the complainants, and to proceed upon it as they did.

It has been contended, that inasmuch as the act mentioned above,

(Union Canal Company *v.* O'Brien and others.)

incorporating the Union Canal Company, did not authorize the company to erect a dam across the whole of the channel of the river *Schuylkill*, the remedy provided in the thirteenth section, which has been recited, cannot be considered as applicable to an injury occasioned thereby; for it is only those injuries which arise from the performance of acts by the company, that are authorized by the act of assembly, that it provides redress or a remedy for. From this act, of the second of *April*, 1811, I think it is pretty evident, that the company had no authority to erect and extend a dam across the whole of the river *Schuylkill :* on the contrary, they are expressly confined by the ninth section of the act, to the erection of wing-dams, and prohibited from extending them more than one-third across the river: and if there were no other act of assembly on the subject, this argument would be perfectly correct. But the act of the twentieth of *February*, 1826, entitled " An act, supplementary to the act entitled ' A further supplement to the several acts to incorporate the Union Canal Company of *Pennsylvania*,' " was passed avowedly for the purpose of enabling the company to erect the dam mentioned in the petition of the complainants, for the purpose of connecting their works in the most advantageous manner possible with the works of the *Schuylkill* Navigation Company. And these acts being *in pari materia,* must be construed as one act, and the remedy therefore provided by the first, may, as it appears to me, be well applied to obtain redress for such injuries as the erection of the dam shall produce *immediately* to the lands of the complainants, or shall in all cases of the like kind, be the *inevitable* consequence of its erection, under the authority contained in the act of 1826. It has likewise been argued, that if the legislature had intended to have extended the course of proceeding prescribed by the thirteenth section of the act of 1811, for obtaining redress of injuries occasioned by the erection of a dam or dams, they would have been more explicit, and have designated them specifically, as they have done in the tenth section of the act of the eighth of *March*, 1815, incorporating " The President, Managers and Company of the *Schuylkill* Navigation Company." Now, although there may be something plausible in this, yet there is certainly nothing conclusive in it; for it was not necessary that the legislature should have recourse to a specific description of all the injuries intended to be provided for, in order to accomplish this object. General terms are frequently used for this purpose, and perhaps it is the more safe mode, lest by omission to enumerate all particularly that were designed to be embraced, some might be left unprovided for. By the terms of the thirteenth section of the act of 1811, the Union Canal Company " shall have the power to purchase so much land along the tract of the canal and adjacent thereto, and *tenements,* mills, mill-ponds, waters, water-courses, or *other real hereditaments,* as shall in their opinion from time to time be *necessary ;* and in *default of purchasing,* it shall be lawful for the courts of Quarter Sessions, or the Mayor's Court in the city of *Philadelphia,* on the application of the

(Union Canal Company *v.* O'Brien and others.)

*owner of the said ground,* &c. to award a *venire* directed to the sheriff, &c. to summon a jury of disinterested men, in order to ascertain and report to the court what *damages,* if any, have been sustained by the *owner* of *the said grounds* by reason of the said canal or *other works.*" The company are here not only authorized to purchase as much land along the tract of the canal, and adjacent thereto, as shall be necessary for it, but are likewise authorized to purchase any *tenements,* mills, mill-ponds, waters, water-courses or *other real hereditaments,* without restriction as to situation, as shall be *necessary* not merely for the construction of the canal alone, but for the " *other works*" connected with it. The " *tenements*" or " *other real hereditaments*" here mentioned, are not spoken of as lying on the tract of the canal, and although not on it nor adjacent to it, yet from their relative situation to some of the *works* connected with the canal, it may be necessary for the company to use them; for instance, to raise an abutment upon them to a dam erected, as in the present case, across the *Schuylkill* river, or to use them, as perhaps was done in this case, by overflowing them with water by the erection of the dam. For lands thus used by the company, and thereby injured to the owners of them, upon the company's failing to purchase them, the owners thereof would be entitled to the remedy prescribed by the thirteenth section of the act. Hence it may be that the complainants in this case have sustained a damage as an *inevitable* consequence from the erection of the dam by the company, in having their messuage, distillery and lot of ground constantly inundated with the water of the river, although situate at some distance from the canal, and above the dam upon the river. But it is impossible to say from anything that is stated in their petition, or that is reported on the subject by the jury, that they have sustained any damage from such a cause. The nature of the injury, and the particular ground of their complaint, are not set forth in this petition. This ought to have been done, at least, if for no other reason, that the Court of Quarter Sessions might see and determine, first, whether it was such a case as fell within the provisions of the act of assembly or not; for unless it should appear to be embraced by the act, the Quarter Sessions had no jurisdiction over it. Or it might be a case of *damnum sine injuria,* as was adjudged in the case of *Shrunk* v. *The President, Managers, and Company of the Schuylkill Navigation Company,* 14 Serg. & Rawle, 71. In that case it was held, that the injury must be such as is done to the property *immediately,* and that the party was not entitled to compensation under the act of assembly of the eighth of *March,* 1815, for an injury sustained in consequence of the erection of a dam across the river *Schuylkill,* by the *Schuylkill* Navigation Company, by reason of which the shad, herring, and other fish were prevented from passing up the same, and the plaintiff, who was the owner of land fronting on the river, and had the exclusive right of drawing seines thereon, lost the benefit of using his land for that purpose in fishing, as he had a right to do before the erection of the dam.

(Union Canal Company *v.* O'Brien and others.)

The late chief justice who delivered the opinion of the court, in page 83, says, " There would be no end to damages for *injuries* considered in the most extensive sense of the word. For not only may the owners of land contiguous to the river, complain of injury by the obstruction to the ascent of the fish, but also all other persons living in towns or lands near the river. All these persons feel the loss of fish. They either cannot get them at all, or must pay a higher price for them. All persons accustomed to fish with an angle or hoop-net may truly say they are injured. There are other kinds of injury, too, sustained particularly by the owners of lands on the river, between *Fair Mount* dam and the *Lower Falls*. All these persons have lost the benefit of a navigation, free from toll, in batteaux, flats, &c. which was very useful, as it served for carrying produce to market and bringing up manure for their lands. Yet it has not been contended that for such injuries compensation is to be made. Suppose the health of the country to be injured by the evaporation from the dams—is compensation to be made for this, the greatest of all injuries? I presume not. Where then, are we to stop, or what is to be the boundary, if we go beyond the line I have mentiond? I confess I should be at a loss to fix another."

Now, although the terms of the act of assembly upon which the question arose and was decided in *Shrunk* v. *The Schuylkill Navigation Company* are not *verbatim* the same with those employed in the act upon which the proceedings in the case before us are said to be founded, still, there is nothing contained in this latter act, that will warrant an extension of the rule laid down in *Shrunk's Case*, as to the nature of the injury for which compensation shall be allowed. And as it does not appear either in the petition of the complainants, or from the report of the jury, what the nature of the injury was, which the erection of the dam by the Union Canal Company is said to have produced to the messuage, distillery, and lot of land belonging to the complainants, and bounding on the river a short distance above the dam, it may be that it is not an *immediate* and *direct* injury done to the property by the erection of the dam, nor such as must *inevitably* follow in *all* cases from the performance of *such* an act. It is, for ought we know from the record, as likely to be an injury of the same description as some of those which have been mentioned as not coming within the provisions of the act of assembly. It may be such as to render the messuage of the complainants no longer safely habitable on account of the impure and noxious evaporation produced by the dam ; and if so, although a very great damage, the complainants would clearly not be entitled to have compensation for it: it would be *damnum absque injuria*. But as the ground and nature of the *injury* do not appear in any part of the proceeding, we are left completely in the dark about it, and to conjecture what it was. This, however, cannot be tolerated. The cause of action or nature of the complaint ought to be set forth in all cases, so that it may be seen and judged of in the first place, whether, supposing it to be true, it is such in

(Union Canal Company *v.* O'Brien and others.)

law as will entitle the party to recover; and if it be, in the next place, it ought to be set forth, to the end that it may appear upon record thereafter, what it was that the plaintiff obtained compensation for, and be a bar to his ever claiming it a second time for the same cause. But in a case like the present, when the court of Quarter Sessions have merely a special and delegated authority to proceed in it, an additional, and perhaps not less cogent reason presents itself for requiring the precise ground and nature of the complaint to be fully set out by the complainant in his petition, in order to show then and thereafter, that the Quarter Sessions had a right to take cognizance of it. Nothing, however, of the kind appearing in this case, we therefore think that the proceeding and judgment should be quashed.

Proceeding and Judgment quashed.